## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **TROY PETERSON,** | ) | **CASE NO. 7:16CV00146** |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **EARL R. BARKSDALE, ET AL.,** | ) | **By: Robert S. Ballou** |
| | ) | **United States Magistrate Judge** |
| **Defendant(s).** | ) | |

Troy Peterson, a Virginia inmate proceeding pro se, filed this civil rights action under 42

U.S.C. § 1983, alleging that officials at Red Onion State Prison ("Red Onion") have failed to

accommodate his religious beliefs. After reviewing the record and liberally construing

Peterson's submissions,[1] I conclude that defendants' motion for summary judgment must be

granted and that plaintiff's motion for summary judgment must be denied.

## I. BACKGROUND

The Virginia Department of Corrections ("VDOC") offers the Common Fare diet

program for inmates who demonstrate that they have sincere religious beliefs that include

specialized religious dietary restrictions.[2] "Common Fare is designed to meet all known

religious dietary restrictions." (Gallihar Aff. ¶ 4, at 2, ECF No. 18-1.) VDOC Operating

Procedure ("OP") 841.3, Attachment 3, lists faith groups that VDOC administrators have

approved to meet in VDOC prison facilities for services and study groups. If an inmate ascribes

---

[1] When, as here, the plaintiff is without counsel, he is held to "less stringent standards," and the court must construe his complaint "liberally." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[2] This summary of the evidence offered on summary judgment is stated in the light most favorable to Peterson, as the nonmovant. Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006). In addition to Peterson's complaint and defendants' evidence attached to their motion for summary judgment and supplemental response (ECF Nos. 18 and 35), I have also reviewed Peterson's proposed amended complaint (ECF No. 16), "motion to dispute facts" (ECF No. 24), motion for summary judgment (ECF No. 33), and response (ECF No. 38).

to a religion included in this list, he is also eligible to apply to receive Common Fare meals, provided that he demonstrates a sincere religious belief requiring dietary accommodations.

According to the procedures in OP 841.3, an inmate who wishes to receive Common Fare meals must file an application, accompanied by documentation demonstrating the sincerity of his stated religious affiliation. An inmate can demonstrate his sincerity by attending religious services if available to him, or if not, by documenting that he possesses or has requested relevant religious literature. The Institutional Classification Authority ("ICA") review each Common Fare application and documentation from the inmate and his counselor and conducts a hearing with the inmate. The inmate's counselor is expected to review the Common Fare program with the inmate and gather and document "any evidence of the offender's religious beliefs, whether it's supporting or not," so the ICA can decide if that "offender has a sincere religious belief that requires a diet that can be met from the Common Fare menu, but not the Master Menu." (OP 841.3(IV)(B)(4).)

OP 841.3 also includes a master religious calendar, listing holy days of various religions that the VDOC has approved for special accommodations. This calendar lists two approved holy day accommodations for Asatru inmates: Summer Solstice (June 20 or 21) and Winter Solstice or Yule (December 21). On these days, Asatru inmates (if otherwise eligible) are to be provided a group meal separate from other general population inmates and a group worship time. The policy directs officials: "Pork should be served; substitute pork for main entrée except for Common Fare." (OP 841.3 Attach. 2, at 23, ECF No. 18-1.) To request accommodation of holy days or feasts not included on the master religious calendar, an inmate must forward his request and supporting documentation to the unit head to be forwarded to the VDOC's Faith Review Committee. To "ensure [V]DOC-wide consistency for offender accommodation of religious

property and practices based on legitimate facility security and operational concerns," the Faith Review Committee "shall determine whether a requested property item, practice, or accommodation should or should not be approved." (OP 841.3(IV)(D)(3) and (4).)

Peterson arrived at Red Onion in March 2015 and was assigned to long-term administrative segregation. At intake, he stated that his religion was Asatru and that he needed a diet consistent to that faith. He was told to talk to his counselor about filing a religious diet request. Peterson also asked to attend weekly Asatru group services. Officials refused this request, explaining that segregation inmates cannot attend group meetings with other inmates and, in any event, Red Onion did not have the minimum number of same-faith inmates requesting regular Asatru group services as required to provide such services. (See OP 841.3(IV)(F)(12), ECF No. 18-1) (setting five-person minimum for religious services absent exception at discretion of unit head). Warden Barksdale refused to grant Peterson an exception to schedule a weekly Asatru group service.

Peterson also complains that at Red Onion, he has not been allowed to practice all Asatru holy days or feasts.[3] On November 15, 2015, Peterson sent the chaplain a website with information about his religion and asked the chaplain to send him articles from the education page, which the chaplain did. On another November 15, 2015, request form, Peterson states that he also sent the chaplain an outline of Asatru religious practices and asked to be allowed to practice his holy days and feasts, meet with others of his faith, and receive a diet with only natural foods. The chaplain reminded Peterson that segregation inmates could not attend group religious services and that he could apply for Common Fare through his counselor.

_____

[3] Peterson does not complain that defendants failed to provide the accommodations stated in the VDOC master religious calendar for the Asatru religious holy days of Summer and Winter Solstice.

3

When Peterson told Barksdale at some point that he wanted to celebrate Asatru holy days and feasts, the warden told him to "write to Richmond." (Am. Compl. 7, ECF No. 16-1.) Peterson filed an informal complaint on January 25, 2016, asking to be allowed to celebrate Ostara, a particular Asatru holy day. The chaplain responded that Ostara is not included on the VDOC's "master calendar" of religious holy days approved for accommodation in VDOC prisons. (Pl.'s Resp. 2, ECF No. 38.) Peterson then filed a regular grievance, stating: "I know Ostara is not on VDOC [list] and that is why I have filed a complaint so I can practice my Holy day." (Defs.' Response, at 3, ECF No. 35-1.) This regular grievance was denied as a request for services.

Peterson complains that the regular diet meals he received at Red Onion beginning in March 2015 included foods inconsistent with his Asatru diet because they were not "from nature." At first, he ate whatever food items he could and discarded the rest, but he started losing weight. On November 3, 2015, he asked to receive vegetarian trays and started doing so in early December. The servings of beans substituted for meat items caused him cramps, however. Peterson complains that while eating regular and vegetarian meal trays at Red Onion, he lost between thirty to forty pounds, going from 188 pounds or more in March 2015, to as low as 150 pounds in October 2015, according to his interpretation of notes in his medical records. (Phipps Aff. Encl., at 26, ECF No. 18-3.) Peterson also alleges that his religious diet problems in

4

2015 caused complications and pain related to his pre-existing medical and mental health conditions.[4]

Peterson wrote a request form to the warden on December 1, 2015, complaining that being served "unholy foods" and being unable to practice his religious holy days had caused him to suffer mental health breakdowns. (Pl.'s Ex. B, at 3, ECF No. 1-1.) This form does not include the name of Peterson's religion, the name of the religious diet he needs, or the specific holy days and feasts he cannot practice. The warden referred the request to a mental health staff member, who responded to Peterson's request on December 3:

> I reviewed your records and found you have listed a faith known as Asatru. I reviewed all the available information on the subject of the Asatru diet and could find only that:
>
> "No special dietary standards exist. Pork, however, is considered sacred to the God Frey, and is generally eaten at the Yule Feast. Asatru inmates should be able to self-select from mainline foods." (from CCKY.org)
>
> If you have documentation to the contrary, please present it to your counselor with your special meal request. At this point, you may be offered a hearing on whether or not a special meal, such as Common Fare, can be offered.

(Id. at 4.)

On January 25, 2016, Peterson submitted a Common Fare Diet Application. He stated that he had practiced Asatru for fifteen years, that he possessed literature on this religion, and that he had religious reasons for seeking Common Fare meals. Counselor Gibson verified this information, stated that Peterson possessed religious literature and had religious tattoos, and had contacted the chaplain on January 8, 2016, for literature. After a hearing on January 29, 2016,

---

[4] Court records reflect that Peterson is pursuing a separate § 1983 action contending that alleged inadequacies of the vegetarian diet he received at Red Onion caused his weight loss and health problems in violation of the Eighth Amendment. See Peterson v. Barksdale, No. 7:16CV00217. The presiding judge, Magistrate Judge Pamela Meade Sargent, has denied defendants' motion to dismiss, set an April 14, 2017, deadline for any summary judgment motions, and scheduled the case for a bench trial. In the case before me, Peterson does not present his health-related diet claim as an Eighth Amendment violation, and I do not construe it as such, in light of his other pending case raising this legal theory.

5

the ICA recommended disapproval of Peterson's Common Fare application. The ICA noted that Peterson, in discussing his religious dietary needs, asserted that he had been practicing his religious beliefs only since his arrival at Red Onion and had first contacted the chaplain for religious literature on January 8, 2016. The ICA also discounted Peterson's claimed need for Common Fare meals because the ICA had observed Peterson eating from regular meal trays many times. The ICA also noted Peterson's comment that if he could order food items from the commissary, he would not need Common Fare.

Peterson signed and dated his § 1983 complaint in this case on March 1, 2016. He submitted a second Common Fare application on March 2, 2016, and received an ICA hearing the same day. In addition to the information included in the first application, Peterson provided names of several Asatru publications he possessed and stated that he "[is] covered in tattoos of symbols of [his] faith." (Gallihar Aff. Encl., at 31, ECF No. 18-1.) He also explained that he needed Common Fare meals because he could not eat many unspecified items served on the regular menu that were not "gift[s] of Mother Nature." (Id.) Among other things, Counselor Gibson provided the ICA with a list of more than ten disciplinary infractions Peterson had accrued between October 25, 2015 and February 25, 2016. The ICA recommended approving this application, but noted Peterson's multiple infractions in recent months, including a charge for attempting to kill a person. Ms. Baker reviewed the ICA's recommendation and disapproved Peterson's Common Fare request on March 17, 2016, because she found his purported religious sincerity to be questionable, based on the recent, serious disciplinary infractions.

On May 23, 2016, the ICA conducted a hearing to reconsider Peterson's March 2 application for participation in Common Fare. The ICA recommended approval, based on a counselor's verification that Peterson claimed to have practiced his religion for fifteen years and

6

possessed Asatru and Odinism study materials.  Ms. Baker approved this application.  Peterson began receiving Common Fare meals on May 26, 2016.

In his § 1983 complaint, Peterson alleges that (a) since March 2015, defendants[5] have failed to provide him with a diet consistent with his Asatru beliefs; (b) denial of a religious diet caused him weight loss and medical concerns; and (c) since March 2015, defendants failed to accommodate his Asatru holy days and feasts, including weekly group services.  He asserts that as to all three claims, defendants' actions have violated his rights under RLUIPA, the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment.  As relief for these alleged violations, Peterson's complaint seeks compensatory damages and injunctive relief.

Defendants have filed a motion for summary judgment contending that Peterson's claims (b) and (c) should be dismissed because he failed to exhaust administrative remedies as required under 42 U.S.C. § 1997e(a) before filing this lawsuit and that his claim (a) is without merit.  Peterson has responded to the motion and has also filed a cross motion for summary judgment.[6]  After review of the record, I conclude that these matters are ripe for consideration.[7]

---

[5]  Defendants named in the complaint are all employees of Red Onion:  Barksdale, Scarbery (spelled Scarberry in defendants' pleadings), Gibson, Stallard, Baker, and Younce.

[6]  Peterson has also filed a motion for default judgment (ECF No. 23), based on the fact that defendants filed their motion for summary judgment three days outside the timeline set by the court.  At that point in the case, defendants had already filed a timely answer.  Therefore, I cannot find that they did not timely respond to the complaint or that they have "otherwise failed to defend," so as to warrant entry of default or default judgment.  See Fed. R. Civ. P. 55.  I deny Peterson's motion accordingly.

[7]  Defendants have filed a motion for a protective order (ECF No. 28), among other things asserting that they should not be required to respond to Peterson's discovery requests until the court has ruled on the threshold issue of exhaustion.  They also assert, and I find, that Peterson's pending discovery requests are general and are not directed at the arguments on summary judgment regarding his one exhausted claim.  Moreover, Peterson has not demonstrated that the discovery he sought is necessary to his response to defendants' motion for summary judgment.  See Fed. R. Civ. P. 56(d).  For these reasons, I grant defendants' motion for protective order.

7

## II.  DISCUSSION

### A.  Standards of Review

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The movant must present the basis for its motion and identify those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  If the movant meets its initial responsibility, the burden then shifts to the nonmovant to demonstrate the existence of a factual dispute, that the fact in contention is material (a fact that might affect the outcome of the suit under the governing law), and that the dispute is genuine (the evidence is such that a reasonable jury could return a verdict for the nonmovant).  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

At summary judgment, the court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine, material factual dispute that must be decided at trial.  Id. at 249.  Although the court must view genuinely disputed facts in the light most favorable to the nonmovant, the court "need not accept the legal conclusions [a party] draw[s] from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006) (omitting quotation).  Detailed factual allegations in a verified, pro se complaint, if based on personal knowledge, may be sufficient to withstand a motion for summary judgment with supporting affidavits and documentation containing a conflicting version of the facts.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted).  Peterson cannot defeat defendants' properly supported summary judgment motion, however, with mere groundless

8

generalizations or speculation.  Kloth, 444 F.3d at 319; Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001) ("Mere speculation by the non-moving party cannot create a genuine issue of material fact."); Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (finding that court need not accept as true plaintiff's "unwarranted deductions," "rootless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations").

B.  Peterson's Proposed Amended Complaint

Peterson has submitted a motion for leave to file an amended complaint (ECF No. 16) that adds new claims against new defendants.  The verified, proposed amended complaint alleges that: (d) Chaplain Cauthorne failed to allow Peterson to hold weekly religious services, celebrate religious feasts and holy days, or receive his religious diet; (e) Chaplain Cauthorne refused to provide Peterson more religious materials after March 9, 2016, because he had "reach[ed his] limit on material" (Am. Compl., at 5, ECF No. 16-1.); (f) Lt. Gilbert and J.B. Messer denied an informal complaint or grievance(s) about Peterson's religious accommodation problems; and (g) VDOC director Harold Clarke and chief of operations Henry J. Ponton allowed Red Onion to violate Peterson's religious rights.  I must deny as futile Peterson's motion for leave to add these new claims to his case.  Even construed liberally, the proposed amended complaint fails to allege facts stating any actionable claim against these five defendants.

First, the amended complaint does not state facts about actions the chaplain took in violation of Peterson's rights.  Indeed, Peterson's allegations as a whole indicate that the chaplain made every effort within his authority to help Peterson practice his beliefs.  The chaplain explained how to apply for Common Fare and provided him religious materials. Moreover, the VDOC operating procedure concerning inmates' religious programs clearly indicates that the Faith Review Committee makes decisions about new religious

9

accommodations for VDOC inmates, rather than allowing individual prison officials or chaplains to make such determinations. (See OP 841.3(III), at 5, ECF No. 18-1.) Thus, I cannot find that Peterson has any viable claim against the chaplain for failing to <u>provide</u> the religious accommodations he requested, when the record clearly establishes that the chaplain had no authority to do so. Furthermore, Peterson fails to explain how denial of unspecified, additional religious material substantially burdened his ability to practice his religious beliefs. <u>See</u>, <u>e.g.</u>, <u>Lovelace v. Lee</u>, 472 F.3d 174 (4th Cir. 2006) (regarding "substantial burden" requirement for § 1983 religious rights claims).

The amended complaint also fails to state any § 1983 claim against defendants Gilbert, Messer, Clarke, and Ponton. Because inmates do not have a constitutional right to a prison grievance procedure, mere responses by Gilbert and Messer to Peterson's informal complaint and grievance forms filed under the established VDOC procedure do not implicate any constitutionally protected right. <u>See</u> <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.") Furthermore, the amended complaint does not allege any personal involvement by VDOC administrators Clarke and Ponton in the decisions at Red Onion about Peterson's religious practices. <u>See</u> <u>Slakan v. Porter</u>, 737 F.2d 368, 373 (4th Cir. 1984) (holding that supervisory liability under § 1983 requires showings that each defendant official had actual or constructive knowledge of risk of constitutional injury and was deliberately indifferent to that risk, and that there is an affirmative causal link between the injury and supervisory official's inaction).

For these reasons, I find that Peterson's motion for leave to file an amended complaint must be denied to the extent that it adds new claims and defendants. In assessing the parties'

motions for summary judgment, however, I have considered other portions of the proposed amended complaint as additional information about Peterson's claims in the original complaint.

### C. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] . . . , by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and "applies to all inmate suits about prison life[.]" Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). When a prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal for "proper exhaustion." Id.

An inmate's failure to exhaust is an affirmative defense that a defendant has the burden to prove. Jones v. Bock, 549 U.S. 199, 216 (2007). Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the plaintiff to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the plaintiff. See, e.g., Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011).

Operating Procedure ("OP") 866.1 is the written administrative remedies procedure that Virginia Department of Corrections inmates must follow to comply with § 1997e(a). Under OP 866.1, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally. He must normally document this informal resolution effort by filing an informal complaint form. Prison staff then provides the inmate with a written response on the informal complaint form and return it to him within fifteen days. The inmate can

11

then initiate the next step under OP 866.1 — a regular grievance, with the informal complaint attached. If the inmate does not receive a response to his informal complaint within 15 days, he may, nevertheless, file a regular grievance form, attaching his receipt as evidence that he filed an informal complaint.

A regular grievance must be filed within 30 days of the occurrence about which it complains. Only one issue may be addressed per grievance. If the ombudsman determines that a grievance does not meet the filing requirements of OP 866.1, he returns it to the inmate within two working days from the date of receipt, stating the reason for return on the intake section of the grievance form. Among other things, a regular grievance may be rejected at intake for raising more than one issue, not providing the informal complaint, not providing sufficient information, or making a request for services instead of grieving a specific event or issue that affected the grievant. The inmate may correct the deficiency and resubmit the grievance, or he may appeal the intake decision to the regional ombudsman.

Once a regular grievance is properly filed, the grievance coordinator should log the grievance on the VDOC computer data base and issue the inmate a receipt within two days. After appropriate investigation of the grievance, the warden or his designee sends the inmate a Level I response. If the responding official determines the grievance to be "unfounded," for full exhaustion, the inmate must appeal that holding to Level II, the regional administrator, and in some cases, to Level III. Expiration of the time limit without issuance of a response at any stage of the VDOC grievance procedure normally qualifies the grievance for appeal to the next level of review, unless officials are granted an extension.

Case 7:16-cv-00146-RSB   Document 39   Filed 03/31/17   Page 12 of 21   Pageid#: 465

Defendants contend that because Peterson failed to exhaust administrative remedies about claim (c), concerning denial of accommodation of Asatru holy days and feasts, this claim should be dismissed under § 1997e(a). I agree.

Defendants offer the following evidence in support of their motion, based on the grievance coordinator's records. On February 28, 2016, Peterson submitted a regular grievance in complaining about the denial of Common Fare, rituals, and worship. The Red Onion ombudsman rejected the grievance on intake on March 3, because it contained more than one issue, and instructed Peterson to rewrite the grievance and resubmit it for intake review. That same day, Peterson resubmitted the grievance, complaining that he had missed celebrating eight unspecified holy days and feasts. On March 9, the ombudsman rejected the regular grievance on intake because Peterson did not provide a copy of the informal complaint and did not specify the dates and names of the missed holy days and feasts. According to defendants' records, Peterson did not resubmit the grievance with the informal complaint, did not appeal the intake decision, and has never filed any other grievances or informal complaints specifying the holy days and feasts in which he is allegedly being denied participation.

In response, Peterson asserts broadly that he "ha[s] exhausted all remettes [sic]" as to all his claims. (Pl.'s Mot. Summ. J. 1, ECF No. 33-1.) He fails to present specific evidence of exhaustion, however, as necessary to avoid summary judgment. He states that he filed many requests and informal complaint forms, wrote letters to Richmond, and talked to officials, asking to celebrate Asatru holy days and feasts. Even accepting this generalization as true, these actions did not follow or complete the steps of the established VDOC grievance procedure (informal complaint, regular grievance, and available appeal(s) to Level II or III) as required for "proper exhaustion" and compliance with § 1997e(a). Woodford, 548 U.S. at 90.

Peterson mentions one informal complaint and grievance he filed about his holy days on an unspecified date that allegedly "came up missing," with no response from the warden's office. (Am. Compl. 7, ECF No. 16-1.)  Also, attached to the complaint is a grievance receipt dated February 10, 2016, that summarizes his grievance as follows:  "Being denied the right to practice his religion (odinism/asatru/heathen of faith."  (Compl. Attach., at 5, ECF No. 1.)  Nothing in the record indicates, however, that Peterson filed a properly formulated regular grievance with information specific enough to put defendants on notice of particular holy day accommodations for which Peterson had been denied accommodation.  Moreover, even assuming Peterson filed such a grievance and did not receive a response, he could still have appealed, using the grievance receipt, to obtain Level II review of his issue.  He fails to demonstrate that he did so or that the grievance procedures were unavailable to him in any way.

Having carefully reviewed Peterson's many submissions and assertions, I find no material dispute of fact on which he could prove that he properly exhausted administrative remedies about being denied particular weekly or annual Asatru holy days or feasts.[8]  Therefore, I grant defendants' motion for summary judgment and dismiss this claim without prejudice under § 1997e(a) for failure to exhaust available administrative remedies.

Defendants assert that Peterson has exhausted administrative remedies as to his claim (a), regarding denial of Common Fare meals.  They also contend that Peterson's claim (b), regarding weight loss and health issues, is not a separate claim, but rather, presents a statement of the harm allegedly caused by the denial of Common Fare meals.

---

[8]  I also find no evidence in the record that Peterson has taken the necessary steps to request that additional Asatru holy days and feasts be approved by the VDOC's Faith Review Committee, as required under OP 841.3 before officials at Red Onion or any other VDOC prison could implement accommodations of such religious practices.

14

The evidence establishes that Peterson submitted a regular grievance complaining that after the ICA approved him to receive the Common Fare diet on March 2, 2016, Ms. Baker denied his application because of his past disciplinary infractions.  Peterson asked to be placed on the Common Fare diet.  Warden Barksdale issued a Level I response on April 26, 2016, deeming Peterson's grievance to be unfounded, based on Ms. Baker's documented determination that "the seriousness" of Peterson's disciplinary infractions in the previous year made his religious sincerity "questionable."  (Messer Aff. Encl. D, at 32, ECF No. 18-2.)  Peterson appealed the Level I decision, and on June 28, 2016, the regional administrator issued a Level II decision deemed the grievance to be "founded," stating that [t]he appropriate administrative remedy [was] to provide a rehearing for Common Fare using the criteria of OP 841.3 for consideration."  (Id., at 33.)  By that point, however, no such rehearing was necessary, because the ICA had already approved Peterson to receive Common Fare meals beginning May 26, 2016.

After review of the evidence, I agree that Peterson has exhausted administrative remedies regarding his Common Fare diet claim.[9]  Therefore, I will address Peterson's claims (a) and (b), together, on the merits.

---

[9]  I also conclude that Peterson completed the exhaustion process regarding his religious diet claim in June 2016, after he filed this civil action on March 2, 2016.  Exhaustion under § 1997e(a) is to be completed before the action is filed and any claim plaintiff failed to exhaust before submitting his civil complaint can be dismissed on that ground.  See Jones v. Bock, 549 U.S. 199, 219-24 (2007); see id. at 211 ("[U]nexhausted claims cannot be brought in court.") (citation omitted).  The failure to exhaust as required by § 1997e(a) is an affirmative defense that defendants must raise and prove.  Id. at 211; see also Custis v. Davis, __ F.3d __, No. 15-7533, 2017 WL 1097130, at *3 (4th Cir. Mar. 23, 2017) (emphasizing that failure to exhaust is an affirmative defense).  Defendants do not raise failure to exhaust as a defense to Peterson's religious diet claim, but assert that this claim is now properly exhausted and argue for summary judgment only on the merits.  Accordingly, I do not dismiss the claim for noncompliance with § 1997e(a).

D.  Religious Diet Claims

Peterson alleges that defendants' failure to provide him a diet consistent with his Asatru religious beliefs violated his rights under both the First Amendment and RLUIPA.  I conclude that defendants are entitled to summary judgment as to both of these claims.

As an initial matter, Peterson cannot recover monetary damages against defendants in their individual or official capacities for a violation of RLUIPA. RLUIPA does not authorize claims for damages, and, therefore, I grant the motion for summary judgment as a matter of law as to that relief.  Sossamon v. Texas, 563 U.S. 277, 281 (2011); Rendelman v. Rouse, 569 F.3d 182, 187-89 (4th Cir. 2009).  Similarly, Peterson cannot recover monetary damages against defendants in their official capacities for a violation of his First Amendment rights, and I grant defendants' motion as to that relief.  See Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).  Thus, the only claims that I must address on the merits are Peterson's claims against the individual defendants for injunctive relief under RLUIPA and the First Amendment, and his claim for monetary damages under the First Amendment against defendants in their individual capacities.

Defendants argue that Peterson's claims for injunctive relief are moot, because he now receives the Common Fare diet as he, himself, requested to meet his religious needs.  I agree and grant defendants' motion as to this claim.

An inmate's claims for declaratory or injunctive relief are moot if he "has no further need for [the requested] declaratory or injunctive relief, for he is free of the policy or practice that provoked his lawsuit in the first place."  Incumaa v. Ozmint, 507 F.3d 281, 287 (4th Cir. 2007). The evidence establishes that Peterson stands in this position.  In his complaint, Peterson demanded injunctive relief to obtain "a religious diet that meets [his Asatru] beliefs" and

16

provides "an all nat[ura]l diet (no artificial or invented foods)."  (Compl. 4.)  When Peterson

filed his second application for Common Fare participation, he signed a Common Fare

Agreement, dated March 2, 2016, stating:  "This program provides me with <u>an appropriate</u>

<u>religious diet</u> that meets or exceeds minimum daily nutritional requirements."  (Gallihar Aff.

Encl. C, at 33, ECF No. 18-1) (emphasis added).  Since late May 2016, Peterson has received

Common Fare meals.  Thus, I find no material dispute that defendants have provided Peterson

with a religious diet that he represented to them as <u>appropriate</u> for his beliefs.

   Peterson's later submissions raise complaints that the Common Fare menu has changed

and includes items that his religion forbids him from eating, such as eggs and meat substitute

products.  Based on these new issues, he contends that his demand for injunctive relief is <u>not</u>

moot.  I find no merit to this argument.  The alleged shortcomings with the current Common

Fare meals did not even arise until months after Peterson instigated this lawsuit on March 1,

2016.  They did not "provoke" the lawsuit and have never been properly added as claims to the

complaint.  Moreover, Peterson is barred under § 1997e(a) from litigating claims about these

Common Fare menu issues, because any such claim was clearly not exhausted before he filed

suit.  <u>See</u> <u>Jones</u>, 549 U.S. at 211 (unexhausted claims cannot be brought in court); <u>see</u> <u>also</u> <u>Custis</u>

<u>v. Davis</u>, __F.3d__, No. 15-7533, 2017 WL 1097130, at *3 (4th Cir. Mar. 23, 2017) ("A court

may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove

that the inmate failed to exhaust his administrative remedies.").  For the stated reasons, I grant

defendants' motion for summary judgment as to Peterson's claims for injunctive relief regarding

his religious diet.

Defendants argue that Peterson's First Amendment claim for monetary damages is without merit because he fails to prove that their actions placed a substantial burden on his exercise of his religious beliefs. I conclude that these arguments have merit.

Under the Free Exercise Clause of the First Amendment, prison officials must reasonably accommodate an inmate's exercise of his sincerely held religious beliefs. O'Lone v. Estate of Shabazz, 482 U.S. 342, 350 (1987). To prove a violation of this right, an inmate must first state facts sufficient to show that the challenged prison policy or management decision substantially burdened his right to free exercise of a sincerely held religious belief. Lovelace, 472 F.3d at 187. In this context, a "substantial burden" on religious exercise occurs if the policy or decision placed "substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. (citation omitted).

To this day, Peterson's facts do not show that defendants' actions placed a substantial burden on his religious dietary practice. It is true that Peterson asked for a religious diet as soon as he arrived at Red Onion in March 2015. According to Peterson, adherents of Asatru must eat only foods from nature. Officials advised him that the VDOC religious diet option was the Common Fare program and that he could see his counselor to prepare and submit the required application. Instead, Peterson chose to self-select items from the regular menu consistent with his religious dietary beliefs. At some point, he requested and was served the VDOC-approved vegetarian substitutes for meat items on the regular menu, but soon decided this option involved too many beans. Nearly ten months after coming to Red Onion, Peterson submitted his first Common Fare application, stating that its menu was "appropriate" for his religious beliefs. He did not then, however, and does not now, state facts showing how the Common Fare menu meets his Asatru dietary needs more completely than the regular menu, with or without the vegetarian

18

substitutes. Pork is the featured food for celebrations of his Asatru holy days of Winter and Summer Solstice. Yet, pork is never served to Common Fare participants even for these celebrations. Peterson also provides no evidence that the meat or other items on Common Fare are more "natural" than items served in the regular or vegetarian meals.

On these facts, I conclude that Peterson has not presented evidence that defendants' failure to provide him Common Fare meals between March 2015 and May 26, 2016, "put substantial pressure" on him "to modify his behavior and to violate his beliefs." Lovelace, 472 F.3d at 187. Thus, he has not demonstrated that defendants' policies or actions placed a substantial burden on his religious practice, and accordingly, defendants are entitled to judgment as a matter of law on his religious diet claim.[10]

### E. Other Claims

Peterson asserts, generally, that defendants' failure to accommodate his religious holy days and his religious dietary needs violated his Fourteenth Amendment right to equal protection. He fails to assert facts showing the necessary elements of such a claim, however. See gen. Morrisson v. Garraghty, 239 F.3d 648 (4th Cir. 2001) (holding that claim of equal protection violation requires showing that plaintiff has been treated differently from others who are similarly situated and that the unequal treatment was the result of intentional discrimination). Therefore, I grant defendants' motion for summary judgment and deny Peterson's motion on this aspect of his claims.

I defendants' motion as to Peterson's many conclusory complaints that defendants violated various VDOC policies and procedures, particularly related to the assessment of his

---

[10] Furthermore, I find no evidence in the record that Peterson took proper steps to seek approve from the appropriate VDOC administrators to have additional dietary accommodations approved for Asatru inmates, as required by the VDOC's centralized religious diet program before officials at Red Onion could provide him such a diet.

Common Fare diet application. For example, he complains that officials violated policy by providing him three ICA hearings on Common Fare participation within six months, when policy allows inmates to file only one Common Fare application every six months. Such alleged violations of state laws are simply not actionable under § 1983. See Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue).

Finally, Peterson has alleged new concerns about accommodation of his religious practices at Red Onion that have arisen since he filed this case. Generally, he states that Common Fare meals include foods inconsistent with his religious dietary beliefs; that defendants have placed some arbitrary limit on the amount of religious materials the chaplain may provide to him; and that defendants provided copies of his-medical records as exhibits to the summary judgment motion without his permission. Peterson is barred under § 1997e(a) from litigating these claims in this case, because he did not exhaust administrative remedies before coming to court. See Jones, 549 U.S. at 211. Therefore, I summarily dismiss these new claims without prejudice and without further discussion. Custis, __F.3d__, 2017 WL 1097130, at *3.

### III. CONCLUSION

For the reasons stated, I grant defendants' motions for a protective order and for summary judgment, and I deny Peterson's motions for leave to amend, for default judgment, and for summary judgment. I dismiss Peterson's claims for monetary damages related to his religious diet with prejudice; and dismiss his remaining claims without prejudice. An appropriate order is entered herewith.

Case 7:16-cv-00146-RSB   Document 39   Filed 03/31/17   Page 20 of 21   Pageid#: 473

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for defendants.

Enter: March 31, 2017

*/s/ Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge